IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| LYNN ALLAN JENKINS I,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>MTGLQ INVESTORS, L.P., et al.,<br><br>　　　　　Defendants. | ORDER<br><br>AND<br><br>MEMORANDUM DECISION<br><br><br>Case No. 1:03-CV-148 TC |

　　　　The Plaintiff, Lynn Allan Jenkins, has filed a Motion for Reconsideration of the court's October 7, 2005 Order finding him in civil contempt and remanding him to the custody of the United States Marshals.  Through counsel, Mr. Jenkins asks that the court vacate the civil contempt order and release him from custody.  Counsel for Mr. Jenkins raises numerous issues regarding whether the civil contempt remedy chosen by the court is appropriate under the circumstances.  The court, upon review of Mr. Jenkins' papers and having received information regarding the decline of Mr. Jenkins' physical and mental health while in custody, GRANTS Mr. Jenkins' Motion for the reasons set forth below.

　　　　The circumstances leading to the court's decision to find Mr. Jenkins in civil contempt and remand him to custody are fully set forth in papers on the record.  The court will not repeat that information here.  But, in summary, the court notes that Mr. Jenkins' refusal to comply with earlier court orders resulted in a finding of contempt that could be remedied by Mr. Jenkins' signature on papers necessary to clear up encumbrances on property.  As the civil contempt order

notes, "<u>Mr. Jenkins has the key to the jailhouse door</u>.  The court has notified Mr. Jenkins that <u>at any time, he may purge himself of contempt</u> by signing the papers.  At such a point, he will be <u>released immediately from custody</u>."  (Oct. 17, 2005 Order at 3 (Docket No.115) (emphasis added).)[1]

The purpose of the court's civil contempt remedy against Mr. Jenkins was purely coercive.[2]  "Where the purpose of the sanction is 'coercive,' the court must consider 'the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired.'"  <u>O'Connor v. Midwest Pipe Fabrications, Inc.</u>, 972 F.2d 1204, 1211 (10th Cir. 1992) (quoting <u>United States v. United Mine Workers</u>, 330 U.S. 258, 303-04 (1947)).  Mr. Jenkins' counsel, however, has pointed out that "[i]f a contempt sanction has lost its coercive effect, the sanction should end."  (Pl.'s Mem. Supp. Mot. for Reconsideration at 3.)

> As long as the judge is satisfied that the coercive sanction might yet produce its intended result, the confinement may continue.  But if the judge is persuaded, <u>after a conscientious consideration of the circumstances pertinent to the individual contemnor</u>, that the contempt power has ceased to have a coercive effect, the civil contempt remedy should be ended.

<u>Simkin v. United States</u>, 715 F.2d 34, 37 (2d Cir. 1983) (emphasis added).  <u>See also</u> <u>Soobzokov</u>

---

[1] During the October 18, 2005 hearing regarding the status of Mr. Jenkins' contempt, the court gave Mr. Jenkins the option of paying $15,000 to the clerk of the court to be held for payment of costs incurred by MTGLQ to get the encumbrances on the property removed without Mr. Jenkins' cooperation.  (<u>See</u> Oct. 18, 2005 Transcript of Contempt Hearing at 17-20.)  Mr. Jenkins refused to take advantage of the alternate opportunity to get himself released from custody.  (<u>Id.</u> at 21-22.)

[2] Mr. Jenkins' counsel contends that the purpose of the court's civil contempt order against Mr. Jenkins was not only to coerce but to punish.  (<u>See</u> Pl.'s Mem. Supp. Mot. for Reconsideration at 4.)  The court strongly disagrees.

v. CBS, Inc., 642 F.2d 28, 31 (2d Cir. 1981) ("When it becomes obvious that sanctions are not going to compel compliance, they lose their remedial characteristics and take on more of the nature of punishment."). Mr. Jenkins' counsel highlights the fact that

> [e]ven following 19 days in custody, incarceration has not proven effective in coercing Mr. Jenkins' compliance. He has repeatedly reiterated, both to counsel and the Court, that he will not comply with the Court's order merely to be released from custody. Mr. Jenkins has also stated several times that this is a matter of principle, and incarceration will not cause him to submit to the Court. In effect, he has sentenced himself to indefinite incarceration.

(Pl.'s Mem. Supp. Mot. for Reconsideration at 5.) Accordingly, Mr. Jenkins' counsel asserts, the court's remedy of incarceration has lost its coercive effect and is causing undue damage.

Specifically, and most importantly for purposes of this ruling, the court has learned that Mr. Jenkins' mental and physical health has deteriorated during his incarceration. (See Sealed Aff. of Steven B. Killpack, dated Nov. 7, 2005.) The court is also under the impression that Defendant MTGLQ has voluntarily taken actions to get the property encumbrances removed without Mr. Jenkins' cooperation.

For the foregoing reasons, the court hereby GRANTS Mr. Jenkins' Motion for Reconsideration. The court ORDERS that Mr. Jenkins is to be released from custody immediately.

IT IS SO ORDERED this 7th day of November, 2005.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
United States District Judge

3